IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Melony Wilson, by and through her next friend and parent Olivia Wilson, | : | CIVIL ACTION No. 2:23-cv-1734 |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | ELECTRONICALLY FILED |
| v. | : | |
| | : | |
| Allegheny Intermediate Unit, Propel Schools, Timothy Fabrizi individually and in his official capacity as Vice Principal for AIU, Katie Patterson individually and in her official capacity as special education coordinator for Propel Schools, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

AND NOW COMES Plaintiff Melony Wilson, by and through her attorney, Jonathan D. Steele, Esquire of STEELE SCHNEIDER, files this Complaint against Defendants Allegheny Intermediate Unit, Propel Schools, Timothy Fabrizi individually and in this official capacity as Vice Principal for AIU school Mon Valley, Katie Patterson individually and in her official capacity and in support thereof aver as follows.

### Parties

1.      Melony Wilson is a 19-year-old individual residing in Pittsburgh, Pennsylvania.

2.      Melony is diagnosed with an intellectual disability.

3.      Melony's disability qualifies her as an "incompetent person" as that term is used in connection with Federal Rule of Civil Procedure 17.

4.      Olivia Wilson is Melony's mother and caretaker. A motion to appoint Ms. Olivia Wilson as guardian ad litem to prosecute this claim on behalf of her daughter Melony is filed with this Complaint.

5.      During the 2022-2023 school year, Melony was a student at Propel Montour Charter School and the Mon Valley School.

6.      Propel Schools operates Pennsylvania public charter schools in multiple locations with corporate offices located at 3447 East Carson Street, Pittsburgh, PA 15203.

7.      Propel Schools owns and operates Propel Montour High School, which is located at 5501 Steubenville Pike, McKees Rocks, PA 15136.

8.      Allegheny Intermediate Unit ("AIU") is a Pennsylvania educational service agency with offices located at 475 East Waterfront Drive, Homestead, PA 15120.

9.      The AIU operates the Mon Valley School located at 555 North Lewis Run Road Jefferson Hills, PA 15025.

10.     Mon Valley is a public, non-residential special education school for students with special needs aged 5 to 21 years old.

11.     AIU receives federal financial assistance.

12.     Propel Schools receives federal financial assistance.

13.    Timothy Fabrizi is an adult individual employed by AIU as Assistant Principal for the Mon Valley School.

14.    Katie Patterson is an adult individual employed by Propel Schools as the Special Education Coordinator for Propel Montour.

### Jurisdiction and Venue

15.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States.

16.    Venue is proper under 28 U.S.C. § 1391(b) because all parties reside in this district and the events giving rise to the claims occurred in this district.

### Factual Background

17.    Propel Montour Charter School was Melony's local education agency, as that term is defined under 34 CFR § 300.28 during the 2022-2023 school year.

18.    Melony's IEP team, led by Propel Montour as the local education agency, determined that Melony required programming at the Mon Valley School to fulfill the objectives of her individualized education program.

19.    During the 2022-2023 school year, Melony attended Propel Montour and Mon Valley.

20.    Melony received educational programming focused on academics at Propel Montour.

21.    Melony participated in a vocational program at Mon Valley for around 2.5 hours per day during the 2022-2023 school year.

22.     On April 1, 2023, Mon Valley employees received an email from a parent that alleged that Melony and J.R., another student at Mon Valley, had sexual intercourse at school on March 31, 2023.

23.     The emailed report did not claim that the intercourse was nonconsensual.

24.     On April 3, 2023, Mon Valley staff members Kaylee Keefe, Jennifer Farabaugh, and Timothy Fabrizi interviewed J.R. about the allegations.

25.     Jennifer Farabaugh and Kaylee Keefe prepared a timeline of their investigation of the March 31, 2023 incident.

26.     Vice Principal Timothy Fabrizi was the administrator in charge of investigating the allegation that Melony and J.R. had sexual intercourse at school.

27.     According to Mon Valley's written timeline, as the time passed during J.R.'s interview, his account of the events on March 31, 2023, changed from "nothing happened" at 9:00 a.m., to J.R. reporting at 10:50 a.m. that Melony was the aggressor in the encounter.

28.     Upon information and belief, J.R. did not face discipline for his involvement in the March 31, 2023 events.

29.     Upon information and belief, J.R. continued to attend Mon Valley through the conclusion of the 2022-2023 school year.

30.     During J.R.'s interview, Vice Principal Fabrizi concluded that the alleged sexual intercourse was non-consensual and that Melony was the aggressor.

4

31.     Vice Principal Fabrizi called the Jefferson Hills police while J.R.'s interview was still ongoing.

32.     Vice Principal Fabrizi called the police despite the fact that he did not speak with Melony about the subject of the report.

33.     Melony attended school on April 3, 2023.

34.     While Mon Valley staff interviewed J.R., Melony was held in an administrative office until her mother could pick her up.

35.     Mon Valley never interviewed Melony or her mother about the March 31, 2023 allegations.

36.     Mon Valley never requested to interview Melony or her mother about the March 31, 2023, allegations.

37.     Mon Valley did not issue any written discipline report or notice for Melony that provided any information concerning the nature of the allegation or punishment issued by Mon Valley.

38.     Mon Valley did not begin an investigation or start a formal grievance process for the March 31, 2023 allegations under its Title IX policies.

39.     Mon Valley did not explain the allegations to Melony or Melony's mother verbally or in writing at any time.

**Mon Valley's Exclusion**

40.     On April 3, 2023, Vice Principal Fabrizi verbally informed Melony's mother that an incident occurred and she would need to communicate with the Jefferson Hills police to learn any more information.

41.     Vice Principal Fabrizi did not provide any substantive information about the factual allegations of the incident to Melony or her mother.

42.     Vice Principal Fabrizi verbally informed Melony's mother that Melony was not permitted to return to Mon Valley effective immediately.

43.     The Jefferson Hills police did not provide Melony's mother with any information concerning the allegation.

44.     Mon Valley did not schedule any disciplinary hearings associated with the March 31, 2023 allegations.

45.     Mon Valley did not schedule a special education manifestation determination associated with the March 31, 2023 allegations.

46.     Mon Valley did not permit Melony to return to school for the remainder of the 2022-2023 school year.

47.     Mon Valley excluded Melony from school for forty-three school days between April 4, 2023-June 8, 2023.

**Propel's Exclusion**

48.     Propel excluded Melony from school beginning on April 4, 2023, after learning of the March 31, 2023 allegations.

49.     Melony's mother asked Vice Principal Fabrizi if the exclusion from Mon Valley also applied to Propel. He informed her that it did.

50.     Melony's mother contacted Katie Patterson at Propel Montour after speaking with Vice Principal Fabrizi to confirm that Propel would not permit her to return.

51.   Ms. Patterson confirmed that Melony was not permitted to return to Propel Montour.

52.   Like Mon Valley, Propel did not provide any oral or written explanation of the reason for Melony's exclusion.

53.   Propel did not conduct an investigation of the March 31, 2023 incident.

54.   Propel did not schedule any disciplinary hearings.

55.   Propel did not schedule a manifestation determination meeting.

56.   Propel did not start a Title IX investigation.

57.   Propel did not send any written notice of charges to Melony or her mother.

58.   Propel did not request an opportunity to interview Melony or her mother.

**Advocacy Efforts for Melony**

59.   Melony's mother consistently requested information from Mon Valley and Propel Montour about the March 31st allegations. Both entities failed to provide any information to Melony's mother.

60.   When Melony's mother requested information, Timothy Fabrizi referred Melony's mother to the police, who did not provide any details concerning their investigation.

61.   Because the schools refused to share any information, Melony's mother sought out the assistance of a disability advocate.

62.     Melony's mother began to work with Lori Capperis, a Disability and Family Supports Advocate from Achieva.

63.     Mon Valley did not provide Ms. Capperis with any information concerning the March 31st allegations.

64.     Propel Montour did not provide Ms. Capperis with any information concerning the March 31st allegations.

65.     Mr. Fabrizi emailed Ms. Capperis on April 24, 2023 to inform her that he "was directed by the AIU3 supervisors that Melony was not be around other students in person until the investigation was complete." Mr. Fabrizi directed Ms. Capperis to reach out to the Jefferson Hills Police department if she had questions about "the ongoing investigation."

66.     As of Mr. Fabrizi's April 24, 2023 email, no educational entity was actively engaged in an investigation.

67.     Ms. Capperis was able to secure a meeting with Propel on April 27, 2023.

68.     After the April 27, 2023 meeting, Propel Montour permitted Melony to return to school in May of 2023.

69.     Even after allowing Melony to return to school, Propel Montour did not share any details of the March 31st allegation.

70.     At no time from April 1, 2023, through her return in May of 2023, did Propel Montour issue any written or verbal notice that Melony was suspended or expelled.

71. Despite Propel Montour allowing Melony to return, Mon Valley continued to exclude her.

72. When Ms. Capperis was unsuccessful in uncovering any additional information about the factual background of the allegation, Melony's mother sought out the assistance of an attorney.

**Melony and her Mother Learn About the Allegations for the First Time**

73. After Mon Valley received a records request from the attorney, the school produced documents that detailed the allegations that led Mon Valley to exclude Melony.

74. Mon Valley produced these records for the first time on May 12, 2023.

75. This Mon Valley May 12, 2023 production of documents to Melony's attorney was the first time Melony or her mother received any information concerning the April 1, 2023 report from any source.

76. The May 12, 2023 production of documents did not include any written notice of charges or other disciplinary allegations against Melony.

77. On May 22, 2023, AIU counsel Joseph Shaulis received a letter via email alerting him of Mon Valley's actions and requesting the Mon Valley School permit Melony to return to school, for the school to adhere to its Title IX Policy, and to hold a manifestation determination.

78. The letter alerted Mr. Shaulis to the IU's violations of Melony's rights under the Due Process Clause, special education law, and the District's Title IX policy.

79.     Mr. Shaulis acknowledged receipt of the May 22, 2023 letter via email the same day.

80.     Neither the AIU nor Mon Valley provided any substantive response to the May 22, 2023 letter.

81.     On or around May 24, 2023, the police closed their investigation without any charges or follow-up conversations.

82.     On or around May 24, 2023, Mr. Shaulis knew that the police closed the investigation without any charges.

83.     Mon Valley's disciplinary exclusion of Melony from April 4-June 8, 2023 was an illegal de facto expulsion from school without any procedural due process.

84.     Propel's disciplinary exclusion of Melony from April 4-May 2023 was an illegal de facto expulsion from school without any procedural due process.

85.     Melony's status as an individual with an intellectual disability provides her with additional and specific educational rights.

86.     Under Pennsylvania law, any disciplinary removal from school—regardless of type or length and excluding only the weapons, drugs, and inflicting serious bodily injury provisions of 34 C.F.R. §300.530(g)(1-3)—of a student with an intellectual disability is considered to be a disciplinary change-in-placement, requiring that a manifestation determination process be undertaken. 22 PA Code §14.143(b).

87.     The March 31, 2023 allegations did not involve any reference to drugs.

88.     The March 31, 2023 allegations did not involve any reference to weapons.

89.     The March 31, 2023 allegations did not involve any reference to serious bodily injury as that term is defined in the applicable regulations.

90.     The Mon Valley School is subject to policies adopted by the AIU board.

91.     AIU's Board has adopted a Title IX policy prohibiting sexual harassment and proscribing mandatory procedures to be followed when school employees receive sexual harassment allegations.

92.     The Board's policy states: "When a report alleges Title IX sexual harassment, disciplinary sanctions may not be imposed until the completion of the grievance process for formal complaints."

93.     The Board's policy states: "The Intermediate Unit shall presume that the respondent is not responsible for the alleged conduct until a determination has been made at the completion of the grievance process for formal complaints."

94.     If the report warrants an emergency removal, "the normal procedures for suspension and expulsion shall be conducted to accomplish the removal, including specific provisions to address a student with a disability where applicable."

95.     The policy states that "all sexual harassment reports and complaints received by the building or program administrator shall be promptly directed to the Title IX Coordinator/Complaint officer in accordance with Board policy."

96.     Timothy Fabrizi did not direct a report or complaint to the AIU or Mon Valley Title IX Coordianator Complaint officer.

97.     Propel failed to follow its Title IX policy.

98.     Mon Valley acted with deliberate indifference to Melony's right to access her public education.

99.     Propel acted with deliberate indifference to Melony's right to access her public education.

100.    Mon Valley knew or should have known of its obligations under Pennsylvania law to provide notice and an opportunity to be heard before excluding a child from school.

101.    Mon Valley knew or should have known of its obligations under its own Title IX policy to begin the grievance process for formal complaints before excluding Melony from school.

102.    Mon Valley knew or should have known of its obligation to hold a manifestation determination before excluding Melony from school.

103.    Mon Valley knew or should have known of the rights of individuals with intellectual disabilities in connection with disciplinary changes in placement.

104.    Mon Valley failed to follow its own policies and procedures and knew or should have known that it was violating Melony's right to equal access to her education.

105.    Mon Valley failed to follow its own policies and procedural safeguards by:

a.      Failing to complete a Title IX investigation.

b.      Failing to provide Melony or her parent with any notices of charges against her- in the context of a Title IX investigation, school disciplinary procedure, or special education manifestation determination.

c.      Failed to provide Melony with any opportunity to be heard or respond in any way.

106.    Mon Valley and Propel's conduct in excluding Melony without any notice of charges or opportunity to respond violated her procedural due process rights.

107.    Mon Valley and Propel employees and administrations knew or should have known of Melony's rights as a student with an intellectual disability.

108.    Propel failed to follow its own policies and procedures and knew or should have known that it was violating Melony's right to equal access to her education.

109.    Like Mon Valley, Propel did not follow any protocol or procedure required under Pennsylvania's student discipline regulations, the IDEA's special education regulations, Section 504's regulations, or Title IX regulations.

**Count I: §1983 Denial of Procedural Due Process Under the Fourteenth Amendment against AIU, Timothy Fabrizi, Katie Patterson, and Propel Schools**

110.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

111.    Melony has a "legitimate entitlement to public education as a property interest protected by the Due Process Clause and which may not be taken away for

misconduct without adherence to the minimum procedures required by that Clause." *Goss v. Lopez,* 419 U.S. 565 (1975).

112.   Under the Pennsylvania Administrative Code, "[e]ducation is a statutory right, and students must be afforded all appropriate elements of due process if they are to be excluded from school." 22 Pa. Code § 12.8.

113.   At all times relevant to this Complaint, Melony was a school-aged individual enrolled in Propel Montour and the Mon Valley schools.

114.   Propel Montour excluded Melony from school without providing verbal or written notice of the charges against her.

115.   Mon Valley excluded Melony from school without providing verbal or written notice of the charges against her.

116.   Propel Montour did not provide Melony with an opportunity to respond to the allegations against her.

117.   Mon Valley did not provide Melony with an opportunity to respond to the allegations against her.

118.   Mon Valley excluded Melony from school without any adjudicative hearing of any type.

119.   Propel Montour excluded Melony from school without any adjudicative hearing of any type.

120.   The schools' exclusion of Melony resulted in mental and emotional distress.

121.   The schools' exclusion of Melony caused her to suffer loss of opportunity damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

(a) Declare that Defendants' actions, as described herein, have violated Plaintiff's procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

(b) Award compensatory damages to Plaintiff for the injuries, harm, and emotional distress suffered as a direct result of Defendants' unconstitutional actions;

(c) Award nominal damages against Defendants;

(d) Award punitive damages against Defendants in an amount sufficient to deter similar unconstitutional conduct in the future;

(e) Grant reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

(f) Provide such other and further relief as the Court deems just and proper under the circumstances.

## Count II: Section 504 Disability Discrimination against AIU, Timothy Fabrizi, Katie Patterson, and Propel Schools

122.   Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

123.   Melony is diagnosed with an intellectual disability.

124.   Melony is disabled as defined by the Rehabilitation Act.

125.    At all times relevant to this complaint Propel Montour knew that Melony was disabled.

126.    At all times relevant to this complaint Mon Valley knew that Melony was disabled.

127.    At all times relevant to this complaint Melony was qualified to participate in school activities at Propel Montour.

128.    At all times relevant to this complaint Melony was qualified to participate in school activities at Mon Valley.

129.    Propel Montour receives federal funding.

130.    Mon Valley receives federal funding.

131.    Melony was excluded from participation in school at Mon Valley and Propel.

132.    Melony was denied the benefits of school.

133.    Propel Montour was deliberately indifferent to Melony's federally protected right to equal access to an education and receipt of a free and appropriate public education.

134.    Mon Valley was deliberately indifferent to Melony's federally protected right to equal access to an education and receipt of a free and appropriate public education.

135.    Mon Valley knew that Melony maintains a federally protected right to access a free appropriate public education under Section 504 of the Rehabilitation Act.

136.   The named defendants knew that excluding Melony from school for an extended period of time would violate her right to access a free appropriate public education under Section 504 of the Rehabilitation Act.

137.   Even after receiving specific written notice of Mon Valley's illegal exclusion of Melony, Mon Valley and Timothy Fabrizi chose to continue the illegal exclusion.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

(a) Declare that Defendants' actions, as described herein, have violated Plaintiff's rights under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794;

(b) Award compensatory damages to Plaintiff for the injuries, emotional distress, and other damages suffered as a direct result of Defendants' discriminatory actions;

(c) Grant reasonable attorney's fees and costs pursuant to the provisions of the Rehabilitation Act, 29 U.S.C. § 794a(b); and

(d) Provide such other and further relief as the Court deems just and proper under the circumstances.

**Count III: 42 USC §1983 Failure to Train Fourteenth Amendment against AIU**

138.   Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

139.    Employees at Mon Valley work at a school that exclusively serves children with disabilities.

140.    AIU know that its employees will be required to address allegations of student misconduct that involves students with disabilities.

141.    It is obvious that administrators overseeing Mon Valley students must be knowledgeable about the rights of students with disabilities and procedural safeguards designed to protect those rights to avoid violating student rights.

142.    AIU failed to train Mon Valley employees about their legal duty to avoid violating student rights to disciplinary notice and hearings, manifestation determinations, Title IX investigations, and unilateral changes in educational placements.

143.    AIU has a duty to train its employees for the purpose of preventing constitutional violations.

144.    AIU failed to train its employees pertaining to the employees following established policies, procedures, directives and instructions regarding the investigation of allegations involving sex between two students and involving potential disciplinary action involving students with intellectual disabilities.

145.    Adequate training of AIU employee Timothy Fabrizi and his subordinates could have prevented the constitutional violation caused by their failure to follow the multiple procedural safeguards designed to protect Melony's right to an education.

146.    AIU and its staff deliberately ignored multiple policies, procedures, and laws designed to safeguard Melony's right to access her public education.

147.    The AIU and its staff deliberately ignored Pennsylvania's rules and regulations concerning student discipline, the IDEA and Section 504's procedural safeguards regarding manifestation determinations, and Title IX's policies and procedures for conducting fair investigations into student-on-student harassment claims.

148.    The AIU's failure to train its employees in the areas of appropriate procedures that would reduce the risk of students being deprived of their constitutional right to procedural due process before loss of access to their free public program of education and training.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

(a) Declare that Defendants' actions, as described herein, have violated Plaintiff's procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

(b) Award compensatory damages to Plaintiff for the injuries, harm, and emotional distress suffered as a direct result of Defendants' unconstitutional actions;

(c) Award punitive damages against Defendant in an amount sufficient to deter similar unconstitutional conduct in the future;

(d) Grant reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

(e) Provide such other and further relief as the Court deems just and proper under the circumstances.

### Count IV: 42 USC §1983 Failure to Train Fourteenth Amendment against Propel

149.    Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

150.    Employees at Propel Montour work at a school that serves children with disabilities.

151.    Propel knows that its employees will be required to address allegations of student misconduct that involves students with disabilities.

152.    It is obvious that administrators overseeing Propel Montour students must be knowledgeable about the rights of students with disabilities and procedural safeguards designed to protect those rights to avoid violating student rights.

153.    Propel failed to train its employees about their legal duty to avoid violating student rights to disciplinary notice and hearings, manifestation determinations, Title IX investigations, and unilateral changes in educational placements.

154.    Propel has a duty to train its employees for the purpose of preventing constitutional violations.

155.    Propel failed to train its employees pertaining to the employees following established policies, procedures, directives and instructions regarding the investigation of allegations involving sex between two students and involving potential disciplinary action involving students with intellectual disabilities.

156. Adequate training of Propel employee Katie Patterson could have prevented the constitutional violation caused by her failure to follow the multiple procedural safeguards designed to protect Melony's right to an education.

157. Propel and its staff deliberately ignored multiple policies, procedures, and laws designed to safeguard Melony's right to access her public education.

158. Propel and its staff deliberately ignored Pennsylvania's rules and regulations concerning student discipline, the IDEA and Section 504's procedural safeguards regarding manifestation determinations, and Title IX's policies and procedures for conducting fair investigations into student-on-student harassment claims.

159. Propel's failure to train its employees in the areas of appropriate procedures that would reduce the risk of students being deprived of their constitutional right to procedural due process before loss of access to their free public program of education and training.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

(a) Declare that Defendants' actions, as described herein, have violated Plaintiff's procedural due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

(b) Award compensatory damages to Plaintiff for the injuries, harm, and emotional distress suffered as a direct result of Defendants' unconstitutional actions;

(c) Award punitive damages against Defendant in an amount sufficient to deter

similar unconstitutional conduct in the future;

(d) Grant reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988; and

(e) Provide such other and further relief as the Court deems just and proper

under the circumstances.

Dated: 04 October, 2023                           Respectfully Submitted,


                                                  */s/Jonathan Steele, Esq.*
                                                  Jonathan Steele, Esquire
                                                  PA I.D. No. 313969
                                                  STEELE SCHNEIDER
                                                  420 Fort Duquesne Blvd., Suite 500
                                                  Pittsburgh, PA 15222
                                                  (412) 235-7682
                                                  jonathansteele@steeleschneider.com